FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 09, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CENTER FOR ENVIRONMENTAL LAW AND POLICY; and WILD FISH CONSERVANCY,

                    Plaintiffs,

          v.

UNITED STATES FISH AND WILDLIFE SERVICE; and DANIEL M. ASHE, in his official capacity as Director of the United States Fish and Wildlife Service,

                    Defendants.

No.   2:15-CV-00264-SMJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

The United States Fish and Wildlife Service operates the Leavenworth National Fish Hatchery (the Hatchery) located on Icicle Creek near the city of Leavenworth, Washington. The Hatchery discharges certain effluent into Icicle Creek, which, pursuant to the Clean Water Act (CWA) requires a National Pollutant Discharge Elimination System (NPDES) permit issued by the United States Environmental Protection Agency (EPA). EPA issued an NPDES permit for the Hatchery that became effective in 1975. Plaintiffs Center for Environmental Law

ORDER **-** 1

1  and Policy and Wild Fish Conservancy (collectively CELP) filed this suit against

2  the Fish and Wildlife Service and its Director (collectively FWS) alleging that the

3  Hatchery's NPDES permit expired on August 31, 1979, and that the Hatchery has

4  been discharging pollutants into Icicle Creek without an NPDES permit since that

5  time, in violation of the CWA.

6      CELP has moved for partial summary judgment, requesting that the Court

7  enter an order determining that FWS is in violation of the CWA for discharging

8  pollutants without an NPDES permit throughout the six-year statute-of-limitations

9  period. FWS has moved for judgment on the pleadings, arguing that this case is a

10  collateral attack on EPA's decision to extend FWS's permit in 1981, which may be

11  brought only in the appropriate court of appeals. In the alternative, FWS moves for

12  summary judgment on the basis that this action is barred under the doctrine of claim

13  preclusion because Wild Fish Conservancy's predecessor, Washington Trout, filed

14  a similar action in 2005.

15      As explained below, because EPA's 1981 letter was not a decision issuing a

16  permit under section 402 of the CWA, this Court has jurisdiction to review CELP's

17  claims under the CWA's citizen suit provision. And CELP's claims are not barred

18  by claim preclusion because the parties to this case and Washington Trout's 2005

19  action are not the same. On the merits of CELP's claims, the Hatchery's NPDES

20  permit expired on August 31, 1979. The permit was not automatically extended,

ORDER - 2

1  and EPA has not issued a new NPDES permit. The Hatchery has therefore been

2  discharging pollutants into Icicle Creek without an NPDES permit throughout the

3  statute-of-limitations period. Accordingly, FWS's Motion for Judgment on the

4  Pleadings and Motion for Summary Judgment are denied; CELP's Motion for

5  Partial Summary Judgment is granted.

6  ## II.   BACKGROUND

7  **A.      Relevant Provisions of the Clean Water Act**

8  The CWA is "a comprehensive water quality statute deigned to 'restore and

9  maintain the chemical, physical, and biological integrity of the Nation's waters.'"

10  *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 704 (1994)

11  (quoting 33 U.S.C. § 1251(a)). The CWA establishes distinct roles for the state and

12  federal governments: among other things, EPA is required to establish and enforce

13  limitations on individual discharges into the navigable waters from point sources,

14  and states, subject to federal approval, must institute comprehensive water quality

15  standards for waters within state borders. *Id.* (citing 33 U.S.C. §§ 1311, 1313, 1314).

16  Section 301(a) of the CWA makes discharge of any pollutant unlawful, except when

17  in compliance with other provisions of the CWA. 33 U.S.C. § 1311(a). One of those

18  exceptions is discharge in compliance with a permit issued under section 402 of the

19  CWA.

20

ORDER **-** 3

Section 402 establishes the National Pollutant Discharge Elimination System (NPDES), which authorizes EPA to issue permits for discharge of pollutants. 33 U.S.C. § 1342; *EPA v. Nat'l Crushed Stone Ass'n*, 449 U.S. 64, 71 (1980). Before EPA can issue an NPDES permit, the appropriate state must issue a certification under section 401 that the activity will not violate water quality standards. 33 U.S.C. § 1341(a). Permits issued under section 402 must be issued for fixed terms not exceeding five years. 33 U.S.C. § 1342(b)(1)(B). But, under the Administrative Procedures Act (APA) and EPA's regulations, the conditions of an expired permit continue until the effective date of a new permit if the permittee timely submits an application for a new permit. 5 U.S.C. § 558(c); 40 C.F.R. § 122.6.

**B.    The Leavenworth National Fish Hatchery**

Icicle Creek originates in the Cascade Mountains and is a tributary to the Wenatchee River, which is a tributary to the Columbia River. ECF No. 14 at 6. Icicle Creek is home to populations of a number of fish species including steelhead, Chinook salmon, bull trout, and mountain whitefish. ECF No. 14 at 6. The Leavenworth National Fish Hatchery (the Hatchery), which is operated by FWS, is located on Icicle Creek approximately three miles upstream from the point where Icicle Creek enters the Wenatchee River. ECF No. 1 at 7, 10; ECF. No. 14 at 3. The Hatchery was constructed to maintain salmon stocks lost as a result of the construction of Grand Coulee Dam on the Columbia River, and it currently targets

ORDER - 4

an annual release of 1.2 million spring Chinook salmon. ECF No. 1 at 10–11. No. 14 at 3.

The Hatchery discharges effluent from its fish rearing raceway to Icicle Creek at "Outfall 1," at approximately river mile 2.8. ECF No. 14 at 4–5. This water "contains some organic solid wastes that consist of uneaten food and fecal matter." ECF No. 15 at 16. The Hatchery also discharges effluent from pollution abatement ponds at "Outfall 2," at approximately river mile 2.7. ECF No. 14 at 5. This water contains "re-suspended organic solids created when the bottom of the rearing ponds are cleaned" including "fish food, fecal matter and other debris." ECF No. 15 at 16–17. Additionally, the Hatchery began discharging effluent from a new location known as "Outfall 6" in August 2015. ECF No. 14 at 6.

**C.    NPDES Permitting for Discharges From the Hatchery**

It is undisputed that the Hatchery discharges pollutants into Icicle Creek,[1] that portions of Icicle Creek and the Wenatchee River have been identified as failing to meet certain water quality standards, and that an NPDES permit is required for discharges from the Hatchery. ECF No. 1 at 10–11; ECF No. 7 at 5–6. EPA issued an NPDES permit authorizing discharge from the Hatchery on December 30, 1974, which became effective on January 30, 1975. ECF No. 1 at

---

[1] These discharges may include uneaten fish food, fecal matter, fish carcasses, spawning waste, disease control chemicals, pathogens, nitrogen, phosphorus, antibiotics, and chemicals. ECF No. 1 at 11; ECF No. 7 at 6.

ORDER - 5

1    12; ECF No. 14 at 12. EPA modified the permit on May 20, 1977, to correctly

2    identify the receiving water as Icicle Creek rather than the Wenatchee River. ECF

3    No. 1 at 12; ECF No. 14 at 13–14. That permit, by its terms, was set to expire on

4    August 31, 1979. ECF No. 1 at 12; ECF No. 14 at 14. FWS did not submit an

5    application for a new NPDES permit prior to the expiration date. ECF No. 14 at

6    14.

7    　　　FWS submitted an application for a new NPDES permit on November 12,

8    1980. ECF No. 1 at 13; ECF No. 25 at 2. On May 6, 1981, FWS received a letter

9    from EPA providing:

10   　　　Your previous [NPDES] permit is automatically extended in
     　　　accordance with the U.S. Administrative Procedures Act (5 U.S.C.
11   　　　Section 558(c)) and 40 CFR Part 122.5. The terms and conditions of
     　　　that permit remain in effect indefinitely until a decision is made to
12   　　　take formal action on permit reissuance based on the new NPDES
     　　　permit application which you have submitted.

13
     　　　Due to budgetary constraints, we are unable to process a permit
14   　　　reissuance for your facility at this time. Your new permit application
     　　　will be retained in our files. In the event that a decision is made to
15   　　　take action on permit reissuance, you may be requested to update the
     　　　information contained in your application.

16
     ECF No. 15 at 110.

17
     　　　FWS has submitted applications for an updated permit on a number of

18
     occasions since 1981, most recently in 2005 and 2011, but EPA has never taken

19
     final action and issued or denied a new NPDES permit. ECF No. 25 at 2–3.

20

ORDER **-** 6

1

**D.**    **2005 Washington Trout Lawsuit and Recent NPDES Permit Applications**

2

3    In 2005 Plaintiff Washington Trout (the predecessor of Wild Fish

4    Conservancy) filed a lawsuit alleging that EPA unlawfully delayed issuing a new

5    NPDES permit for the Hatchery, that EPA's extension of the 1975 Permit was

6    arbitrary, and that FWS was unlawfully discharging pollutants from the hatchery

7    in violation of the CWA. *Washington Trout v. Leavenworth Nat'l Fish Hatchery*,

8    No. 05-00203 (E.D. Wash. July 8, 2005); ECF No. 14 at 14–15. The parties to that

9    case reached a settlement agreement, pursuant to which EPA issued a draft

10   NPDES permit for the hatchery in August 2006. ECF No. 14 at 15; ECF No. 25 at

11   3. The court dismissed the case with prejudice. *Washington Trout v. Leavenworth*

12   *Nat'l Fish Hatchery*, No. 05-00203 (E.D. Wash. Feb. 22, 2007)

13   Following draft and final section 401 certifications issued by the

14   Department of Ecology in November 2009 and January 2010, EPA issued a new

15   draft NPDES permit on December 21, 2010. ECF No. 14 at 15–16. However, in

16   light of significant changes to Hatchery operation plans since 2005, EPA

17   determined that FWS should submit an entirely new NPDES permit application.

18   ECF No. 24 at 4. On October 24, 2011, FWS submitted a new NPDES permit

19   application, which, among other things, identified a new discharge into the

20   Hatchery channel, "Outfall #6." ECF No. 14 at 17. FWS requested that Ecology

issue a new certification under section 401. ECF No. 14 at 17–18. In consultation

ORDER **-** 7

with Ecology concerning needed additional information and developing additional

water quality studies, FWS has withdrawn and resubmitted its application for

certification several times. ECF No. 14 at 18; ECF No. 24 at 6–9. Ecology

officially rescinded the January 2010 section 401 certification on June 9, 2016,

and has not yet issued a new certification. ECF No. 24 at 5.

**E.    Procedural History**

CELP filed this action in September 2015 pursuant to the CWA's citizen

suit provision, 33 U.S.C. § 1365. ECF No. 1. CELP alleges that the NPDES

permit expired on August 31, 1979, and was not automatically extended because

FWS did not timely file an application for a new permit. ECF No. 1 at 13. CELP

further alleges that because the NPDES permit expired, was not extended, and

EPA has not issued a new permit, FWS has been discharging pollutants into Icicle

Creek without a valid NPDES permit and in violation of the CWA for the last 36

years. ECF No. 1 at 13–15. CELP alleges that FWS has contributed to the long

delay in obtaining a new NPDES permit by repeatedly withdrawing applications

for certification submitted to the Washington Department of Ecology and making

requests that the EPA delay action on submitted NPDES permit applications. ECF

No. 14. Additionally, CELP alleges that the Hatchery began discharging

pollutants from one or more new pipes or conveyances that were never authorized

by any NPDES permit. ECF No. 1 at 13–14.

ORDER **-** 8

On August 29, 2016, CELP filed a motion for partial summary judgment requesting that the Court issue an order determining that FWS is in violation of section 301(a) of the Clean Water Act for discharging pollutants from the Hatchery without a permit. ECF No. 13. On October 3, 2016, FWS moved for judgment on the pleadings, requesting dismissal of this suit for lack of subject matter jurisdiction, ECF No. 22, and for summary judgment on the basis that this suit is barred under the doctrine of claim preclusion, ECF No. 23.

### III.  STANDARD OF REVIEW

**A.    Subject Matter Jurisdiction**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of demonstrating subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may review evidence outside the pleadings and, if necessary, resolve factual disputes. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

**B.    Summary Judgment**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary

ORDER **-** 9

1    judgment, the opposing party must point to specific facts establishing that there is

2    a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If

3    the nonmoving party fails to make such a showing for any of the elements

4    essential to its case for which it bears the burden of proof, the trial court should

5    grant the summary judgment motion. *Id.* at 322. When considering a motion for

6    summary judgment, the Court does not weigh the evidence or assess credibility;

7    instead, "the evidence of the non-movant is to be believed, and all justifiable

8    inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477

9    U.S. 242, 255 (1986).

10                              **IV.  DISCUSSION**

11   **A.    The Court has Subject Matter Jurisdiction to Consider CELP's**
            **Claims.**

12
           The CWA's citizen suit provision authorizes civil actions by any citizen

13   "against any person (including [a government entity]) who is alleged to be in

14   violation of . . . an effluent standard or limitation . . ." and gives district courts

15   jurisdiction "to enforce such effluent standard or limitation, . . .  and to apply any

16   appropriate civil penalties under section 1319(d)." 33 U.S.C. § 1365(a). However,

17   section 509(b)(1)(F) provides that the courts of appeals have exclusive jurisdiction

18   to review an EPA decision "issuing or denying any permit under section [402]." 33

19   U.S.C. § 1369(b)(1)(F). This provision is interpreted narrowly. *See Nw. Envtl.*

20   *Advocates v. EPA*, 537 F.3d 1006, 1016–18 (9th Cir. 2008).

ORDER **-** 10

FWS first argues that the threshold question whether this case falls within the courts of appeals' exclusive jurisdiction may be considered only by a court of appeals. ECF No. 36 at 3–4. That is simply incorrect. This Court always has the power and obligation to determine whether it has jurisdiction over a case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Here that requires determining whether a particular claim falls within the exclusive jurisdiction of another court. There is nothing unusual about this. Indeed, district courts regularly evaluate whether cases fall within the courts of appeals' exclusive jurisdiction under section 509(b)(1) of the CWA.  *See, e.g.*, *North Dakota v. U.S. Envtl. Prot. Agency*, 127 F. Supp. 3d 1047, 1052–53 (D. N.D. 2015); *Nat'l Wildlife Fed'n v. U.S. Envtl. Prot. Agency*, 949 F. Supp. 2d 251, 254–55 (D. D.C. 2013); *Riverkeeper, Inc. v. U.S. Envtl. Prot. Agency*, 514 F. Supp. 2d 565, 567–68 (S.D.N.Y. 2007); *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 266 F. Supp. 2d 1101, 1113–20 (N.D. Cal. 2003). And any concern about this court making a determination concerning the extent of the courts of appeals' jurisdiction is fully mitigated by two factors: first, any decision by this court would not be binding precedent in the courts of appeals, and second, the circuit court in question has appellate jurisdiction to review this court's decision.

On the substantive question of jurisdiction, FWS argues that this case is a collateral attack on EPA's decision to extend FWS's permit in 1981, which may be

ORDER - 11

1   brought only in the appropriate court of appeals. ECF No. 22 at 1–2, 7–13. Plaintiffs

2   agree that a final EPA decision issuing an NPDES permit may be challenged only

3   in a court of appeals and that if the 1981 letter was a final decision extending the

4   permit, this court would lack jurisdiction. ECF No. 31 at 4. But Plaintiffs argue that

5   this court is not deprived of jurisdiction because EPA's 1981 letter was not a final

6   agency action. ECF No. 31 at 2–3, 9–12.

7        "Final agency action" as used by the parties here is a requirement for bringing

8   certain claims under the Administrative Procedure Act. *See, e.g.*, *Bennett v. Spear*,

9   520 U.S. 154, 177–78 (1997). Some courts of appeals have held that review of EPA

10  action under section 509(b)(1)(F) is available only if EPA's decision is "a final

11  agency action." *See Rhode Island v. EPA*, 378 F.3d 19, 23 (1st Cir. 2004);

12  *Appalachian Energy Grp. v. EPA*, 33 F.3d 319, 322 (4th Cir. 1994). But while

13  finality may be important to whether an EPA decision is ultimately reviewable in

14  the courts of appeals, it is not determinative of whether a claim falls within the

15  courts of appeals exclusive jurisdiction as defined by the CWA. That question turns

16  on whether EPA issued or denied a permit under section 402. *See* 33 U.S.C. §

17  1369(b)(1)(F). Here, EPA's 1981 letter did not amount to the issuance of a permit

18  under section 402.

19       First, EPA's May 6, 1981 letter by its own terms does not purport to extend

20  or reissue the 1975 NPDES permit. Instead, it simply advises FWS that the "permit

ORDER **-** 12

is *automatically* extended in accordance with the U.S. Administrative Procedures Act (5 U.S.C. Section 558(c)) and 40 CFR Part 122.5," ECF No. 15 at 110 (emphasis added). This advice was manifestly incorrect. The conditions of an expired NPDES permit continue until the effective date of a new permit only if the permittee timely submits an application for a new permit. 5 U.S.C. § 558(c); 40 C.F.R. § 122.6. In 1979, EPA's regulations provided that "Expiring permits shall submit new applications at least 180 days before the expiration date of the existing permit, unless permission for a later date has been granted by the Director." 44 Fed. Reg. 32,854, 32,903 (Jun. 7, 1979). The regulations further provided that

> The terms and conditions of an expired permit are automatically continued under 5 U.S.C. 558(c) pending issuance of a new permit if:
>
> (i) the permittee has submitted a timely and sufficient application for a new permit under § 122.10(a); and
>
> (ii) The Regional Administrator is unable, through no fault of the permitee, to issue a new permit before the expiration date of the previous permit (e.g., where it is impractical due to time and/or resource constraints).

*Id.* at 32,903–04. In 1980 EPA amended its regulations such that for permits expiring on or before November 30, 1980, a new application could be filed up until the date on which the permit expired. 45 Fed. Reg. 33290, 33442–43 (May 19, 1980). The NPDES permit for the Hatchery was set to expire at midnight on August 31, 1979. ECF No. 1 at 12; ECF No. 14 at 14. FWS did not submit an application for a new

ORDER - 13

1    NPDES permit prior to this expiration date. ECF No. 14 at 14. The permit therefore

2    expired at midnight on August 31, 1979.

3         Second, even if the 1981 letter included language affirmatively extending

4    the permit, the purported extension would have been ineffective. Under section

5    402, EPA may issue permits authorizing discharge of pollutants after opportunity

6    for public hearing and where the discharge will either meet all applicable

7    requirements under the CWA or meet certain conditions set by the EPA. 33 U.S.C.

8    § 1342(a)(1). EPA has no authority to extend the terms of an expired permit

9    without complying with the processes for issuing a new permit. As discussed, the

10   terms of a permit may be extended automatically where a permitee files a timely

11   application for a new permit. But EPA has no power to intervene and extend a

12   permit where the permitee fails to file a timely application.

13        EPA could have acted on FWS's November 12, 1980 NPDES permit

14   application—or any of the FWS's subsequent applications—and either issued or

15   denied an NPDES permit. But it has never done so. EPA's May 6, 1981 letter

16   incorrectly advising FWS that the NPDES permit for the Hatchery had been

17   automatically extended was not a decision "issuing" a permit under section 402.

18   Accordingly, this matter does not fall within the exclusive jurisdiction of the

19   courts of appeals under section 509(b)(1)(F) of the CWA. This Court has

20

ORDER **-** 14

1   jurisdiction to hear CELP's claims pursuant to the CWA's citizen suit provision.

2   *See* 33 U.S.C. § 1365(a).

3   **B.     CELP's Claims Are Not Barred by Claim Preclusion.**

4   FWS argues that Plaintiff Wild Fish Conservancy brought the same claims in

5   2005 in *Washington Trout v. Leavenworth National Fish Hatchery*, No. 05-00203

6   (E.D. Wash. July. 8, 2005). ECF No. 23. Washington Trout (the predecessor to Wild

7   Fish Conservancy) alleged, among other things, that EPA's extension of the 1975

8   permit was arbitrary, and that FWS was unlawfully discharging pollutants from the

9   hatchery in violation of the CWA. That case was dismissed with prejudice following

10  settlement.

11  "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final

12  judgment on the merits; and (3) identity or privity between the parties." *Cell*

13  *Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009) (quoting

14  *Steward v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)). FWS's argument fails

15  because the parties here are not the same. Washington Trout is the former name of

16  Wild Fish Conservancy, but CELP was not a party to that action.

17  FWS argues that Washington Trout and CELP were in privity in the 2005

18  action because privity extends to all members of the public in an action brought

19  under the CWA's citizen suit provision. ECF No. 22 at 11–13. No court has ever

20  adopted such a rule, and this Court rejects FWS's invitation to do so here. FWS

ORDER **-** 15

1  relies on cases holding that where a state brings a *parens patriae* action on behalf

2  of its citizens, the state may be in privity with those citizens. *See Alaska Sport*

3  *Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994). But under the

4  *parens patriae* doctrine "[t]here is a presumption that the state will adequately

5  represent the position of its citizens." *Id.* By contrast, a citizen (or entity) bringing

6  a citizen suit under the CWA does not actually represent all citizens; instead, he

7  brings the action "on his own behalf." 33 U.S.C. § 1365(a). And an entity bringing

8  an action under the CWA must have standing based on its own interests or those of

9  its members. *See Friends of the Earth, Inc. v. Laidlaw, Envt'l Servs. (TOC), Inc.*,

10  528 U.S. 167, 180–81 (2000). Further, where, as here, a citizen suit provision is

11  intended primarily to enforce the government's compliance with certain laws, it

12  would risk defeating the purpose of the provision to permit an individual to settle

13  with the government and thereby preclude other citizens from bringing the same

14  claim. Such a rule could create an incentive for coercion or other misconduct, and

15  the individual claimant would have far too much power concerning the remedy for

16  alleged misconduct that may affect many others.

17  **C.    Discharges from the Hatchery Violate the CWA.**

18       It is undisputed that that an NPDES permit is required for discharges from

19  the Hatchery. ECF No. 1 at 10–11; ECF No. 7 at 5–6; ECF No. 9 at 13–14. The

20  Hatchery's NPDES permit expired at midnight on August 31, 1979. ECF No. 1 at

ORDER **-** 16

12. The permit was not automatically extended, and EPA has not issued a new

permit. Accordingly, FWS has been discharging pollutants from the Hatchery

without a permit in violation of section 301(a) of the CWA since September 1, 1979.

*See* 33 U.S.C. § 1311(a).

## V.   CONCLUSION

For the reasons discussed, this Court has jurisdiction to hear this case,

CELP's claims are not barred by claim preclusion, and FWS has been discharging

pollutants from the Hatchery without an NPDES permit and in violation of the

CWA during the applicable statute-of-limitations period.

Accordingly, **IT IS HEREBY ORDERED**:

**1.**   Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 13**, is **GRANTED**.

**2.**   Defendants' Motion for Judgment on the Pleadings, **ECF No. 22**, is **DENIED**.

**3.**   Defendants' Motion for Summary Judgment, **ECF No. 23**, is **DENIED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and

provide copies to all counsel.

**DATED** this 9th day of January 2017.

SALVADOR MENDOZA, JR.
United States District Judge

ORDER - 17